IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRED AVERY, et al.

v.

CHARIOTS FOR HIRE, et al.

            : Civil Action No. DKC 09-2524

**MEMORANDUM OPINION**

Presently pending and ready for review in this Fair Labor Standards Act action is a motion to dismiss Plaintiffs' amended complaint or, in the alternative, for summary judgment filed by Defendants Chariots for Hire, et al. (Paper 18). The issues are briefed fully and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion will be granted in part and denied in part.

## I. Background

The following facts are alleged by Plaintiffs in their Amended Complaint. Plaintiffs Fred Avery, Inez Henry, and Eddie Mackey Jr. were employed as drivers by Defendant Chariots for Hire, a business that provides chauffeured ground transportation in the Washington, D.C. metropolitan area and throughout the East Coast. (Paper 15 ¶¶ 17, 18, 19, 25, 28). Defendant Chariots for Hire is owned by Defendant M and C Enterprises. (*Id.* at ¶ 20). Defendants Michael Fortkort and Courtney West

are co-owners of Defendants Chariots for Hire and M and C Enterprises. (*Id.* at ¶¶ 22-23).

Plaintiffs drove motor coaches, limo buses, minibuses, limousines, sedans, sport utility vehicles, and vans for Chariots for Hire (*Id.* at ¶ 6). Before 2009, Plaintiffs were paid on an hourly, not salaried, basis regardless of the type of vehicle they drove. (*Id.* at ¶ 28). Defendants promised to pay Plaintiffs $16 per hour for work done Monday through Friday and $20 per hour on Saturdays, including from the time they arrived at the yard where vehicles are kept until the time they returned the vehicle to the yard at the end of a day. (*Id.* at 38). Defendants maintained a system whereby employees tracked their hours in log books. (*Id.* at ¶ 37). Plaintiffs were not compensated for the pre-trip cleanings and inspections they were required to conduct before picking up customers. (*Id.* at ¶ 29). And Defendants deducted up to $100 per paycheck from Plaintiffs' wages for damage to the vehicles, such as dents, scratches, and dings. (*Id.* at ¶ 41).

In January 2009, Defendant West held a staff meeting to discuss compensation changes. Beginning in January 2009, Plaintiffs' work hours were capped at eight per day; for trips over eight hours they were paid a day rate. (*Id.* at ¶ 30). Plaintiffs were promised a $25 meal per diem for out-of-town trips. (*Id.* at ¶ 45). At the meeting, West promised Plaintiffs

that he would start paying drivers for pre-trip cleaning and inspections. (*Id.* at ¶ 46).

Defendants maintained a practice of charging clients a twenty percent service fee, which included tax, fuel, and partial gratuity. (*Id.* at ¶ 47). Drivers were instructed by Defendant Fortkort and the company's Chauffeur Manual not to request tips from customers. (*Id.* at ¶ 48). At the January 2009 meeting, drivers complained about not receiving tips when customers were charged a gratuity. (*Id.* at ¶ 49). Former customers Sean Logan and Brendan Barber thought that a portion of the service fee they paid would be given to Avery. (*Id.* at ¶¶ 50-51).

Plaintiff Avery was employed by Chariots for Hire from November 2007 to August 2009. (*Id.* at ¶ 31). Plaintiff Henry was employed by Chariots for Hire from January to June 2009. (*Id.* at ¶ 34). Plaintiff Mackey was employed by Chariots for Hire from February 2007 to April 2009. (*Id.* at ¶ 35). Plaintiffs regularly worked hours for which they were not compensated. (*Id.* at ¶¶ 32, 34, 36). Plaintiff Avery worked more than forty hours a week but was not compensated at a rate of time-and-a-half for overtime hours when he drove Defendants' vehicles with a gross vehicle weight of less than 10,001 pounds. (*Id.* at ¶ 32). Additionally, Plaintiffs were not compensated

for the meal per diem or pre-trip cleaning or inspections. (*Id.* at ¶ 45-46).

Plaintiffs filed a complaint against Defendants for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann. Lab. & Empl. §§ 3-401 *et seq.* and §§ 8-101 *et seq.* (Paper 1). Plaintiffs brought the lawsuit as a collective action under the FLSA and as a class action. On December 18, 2009, Plaintiffs filed an amended complaint.[1] (Paper 15). Plaintiffs' amended complaint alleges claims for unpaid wages under the FLSA, unpaid wages under the MWHL, breach of agreement, and fraudulent misrepresentation.[2]

_____

[1] Defendants did not move to strike Plaintiffs' amended complaint but have moved to dismiss the amended complaint because Plaintiffs did not seek leave to amend. Fed.R.Civ.P. 15(a)(1), which allows parties to amend once as a matter of course, was revised on December 1, 2009. Defendants filed their initial motion to dismiss Plaintiffs' complaint on November 18, 2009. The revised Rule allows a plaintiff to amend within twenty-one days of the filing of a motion under Rule 12(b). Because Defendants' 12(b) motion was filed during the transition time and Defendants address Plaintiffs' amended complaint in their second 12(b) motion, Plaintiffs' amended complaint will be permitted.

[2] Plaintiffs seek compensatory damages for unpaid and overtime wages under the FLSA and unpaid wages under the Maryland Wage Payment Law, liquidated damages equal to their unpaid wages under the FLSA, treble damages under the Maryland Wage Payment and collection law, prejudgment interest, a declaration that this action is maintainable as a collective

**A.    Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S.

---

action under 29 U.S.C. § 216(b), a direction for Defendants to provide Plaintiffs with a list of all persons employed by Defendants during the class period, an award of attorney's fees and costs, and all other relief as the court deems necessary. (Paper 15, at 11).

266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## B. Analysis

### 1. Unpaid Wages

The FLSA is a federal statute of general application that establishes minimum wages, overtime pay, child labor, and equal pay requirements. 29 C.F.R. § 778.0. "All employees whose

employment has the relationship to interstate or foreign commerce which the Act specifies are subject to the prescribed labor standards unless specifically exempted from them." *Id*. Similarly, all employers having such employees are required to comply with the Act's provisions unless they are relieved by an exemption under the Act. *Id*. The FLSA was enacted by Congress as a remedial act and, therefore, its exemptions must be narrowly construed. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, *reh'g denied*, 362 U.S. 945 (1960). To state a *prima facie* case under the FLSA, plaintiff must show "as a matter of just and reasonable inference that the wages paid to him did not satisfy the requirements of the FLSA." *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513 (11th Cir. 1993)(internal citation omitted); *see also Hunter v. Sprint Corp.*, 453 F.Supp.2d 44, 52 (D.D.C. 2006)("plaintiff-employee can make out a *prima facie* case of an FLSA violation by alleging that he performed work for which he was not properly compensated and then 'produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'").

### a. Overtime Wages

Defendants assert that Plaintiffs have not stated a claim for unpaid or overtime wages. Defendants argue that Plaintiffs

are not entitled to overtime wages under the motor carrier exemption to the FLSA and MWHL. (Paper 18, Attach. 1, at 8).

Plaintiffs respond that at least Plaintiff Avery is entitled to overtime wages because he is not exempt from coverage under the FLSA pursuant to the motor carrier exemption. (Paper 25, at 7-10). Plaintiffs assert that Plaintiff Avery often drove vehicles with a gross weight of less than 10,001 pounds, which, they argue, are not defined as commercial motor vehicles under 49 U.S.C. § 31132(1).

29 U.S.C. § 207(a)(1) provides:

> (a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions
>
> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one half times the regular rate at which he is employed.

The overtime pay provision in § 207 does not apply to employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [the

8

Motor Carrier Act of 1935]."  29 U.S.C. § 213(b)(1).  49 U.S.C. § 31502(b)(2) provides:

> (b) Motor carrier and private motor carrier requirements.  The Secretary of Transportation may prescribe requirements for:
>
> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
>
> (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

"Motor carrier" for purposes of § 31502(b) has the same meaning given that term in § 13102 of the same title.  During the relevant time period, the definition of "motor carrier" in 49 U.S.C. § 13102 changed several times.  Prior to August 10, 2005, § 13102 defined a "motor carrier" as a "person providing motor vehicle transportation for compensation."  Effective August 10, 2005, the definition was modified with the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU) by striking the phrase "motor vehicle" from the definition and inserting the phrase "commercial motor vehicle (as defined in section 31132)."  Pub. L. No. 109-59, § 4142(a) (2005) (codified as amended at 49 U.S.C. § 13102(14) (2005).  Section 31132 defined a commercial motor vehicle as a:

Self propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle –

(A) Has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;

(B) is designed or used to transport more than 8 passengers (including the driver) for compensation;

(C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or

(D) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

49 U.S.C. § 31132(1).

This definition remained in effect until June 6, 2008, when Congress restored the pre-SAFETEA-LU Act definition of motor carrier in the SAFETEA-LU Technical Corrections Act, so that the definition of motor carrier was no longer limited to drivers of commercial vehicles. *See* 49 U.S.C. § 13102(14); Pub. L. No. 110-244 § 305 (2008). The Technical Corrections Act also added a note to section 7 of the Fair Labor Standards Act, however, which effectively limited the applicability of the motor carrier exemption to the same types of employees covered under SAFETEA-LU's definition. Specifically the Technical Corrections Act, added the following note to section 7:

(a) APPLICABILITY FOLLOWING THIS ACT. –
Beginning on the date of enactment of
this act [June 6, 2008], § 7 of the
Fair Labor Standards Act of 1938 (29
U.S.C. § 207) shall apply to a covered
employee notwithstanding § 13(b)(1) of
that Act [the Motor Carrier Exemption]

(b) COVERED EMPLOYEES DEFINED. – In this
section, the term 'covered employee'
means an individual –

(1) Who is employed by a motor carrier
or private carrier (as such terms
are defined by § 13102 of Title 49
of United States Code, as amended
by § 305);

(2) Whose work, in whole or in part,
is defined–

(A) As that of a driver, driver's
helper, loader, or mechanic;
and

(B) As affecting the operation of
motor vehicles weighing
10,000 pounds or less in
transportation on public
highways in interstate or
foreign commerce, except
vehicles –

(i) Designed or used to
transport more than
eight passengers
(including the driver)
for compensation;

(ii) Designed or used to
transport more than 15
passengers (including
the driver) and not used
to transport passengers
for compensation; or

(iii) Used in transporting
material found by the

> Secretary of Transportation to be hazardous under § 5103 of Title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under § 5103 of Title 49, United States; and
>
> (3) Who performs duties on motor vehicles weighing 10,000 pounds or less.

Pub. L. No. 110-244 Title III, § 305 (2008).

The parties proffer differing interpretations of the definition of "commercial motor vehicle" in the motor carrier exemption under SAFETEA-LU and the motor vehicle description in the June 2008 note to section 7 of the FLSA. Defendants contend that even when Plaintiff Avery was driving vehicles weighing less than 10,001 pounds the exemption still applied to him because he was driving a "vehicle designed or used to transport eight or more passengers for compensation." (Paper 28, at 7-9). Plaintiff Avery counters that the vehicle weight test is not separate and distinct from the requirement that the vehicle transport eight or more passengers for compensation and, therefore, to be exempt from the FLSA's overtime requirement an employee must drive a vehicle that both weighs more than 10,000 pounds and is designed or used to transport at least eight passengers for compensation. (Paper 25, Attach. 1, at 8-9).

Defendants have the better argument. Both the definition of commercial motor vehicle in § 31132(1) under SAFETEA-LU and the note to section 7 of the FLSA in the Technical Corrections Act list the vehicle attributes necessary for an employee to qualify for the motor carrier exemption in a list of alternatives. Although the definition does not include an "or" between each item in the list, there is an "or" to separate the final item from the penultimate one. This structure is traditionally used to indicate a list of alternatives. *See George Hyman Constr. Co. v. Occupational Safety & Health Review Comm'n*, 582 F.2d 834, 840 (4th Cir. 1978)("Normally, use of a disjunctive indicates alternatives and requires they be treated separately unless such a construction renders the provision repugnant to the Act."). Here, the only reasonable interpretation is that the series of items was meant to be a list of alternatives. Plaintiffs' approach of reading each item as an additional conjunctive requirement would remove almost every employee from the exemption's scope. For example, if the second and third items in the list are read as mutual requirements, i.e. if the motor carrier exemption only applied to employees driving vehicles used or designed to transport eight or more passengers for compensation and used to transport fifteen or more passengers not for compensation, it would be nearly impossible to find an employee whose job responsibilities

fell within these parameters. There is no evidence that Congress intended to restrict the scope of the exemption so severely. The more reasonable interpretation, and the one that will be applied here, is that the list contains alternatives such that the motor carrier exemption applies to employees that drive vehicles weighing at least 10,001 pounds and to employees that drive vehicles that could transport at least eight passengers for compensation, regardless of weight. Thus, when Plaintiff Avery drove vehicles carrying at least eight passengers, regardless of their gross weight, he was exempt from overtime pay. The remaining question is whether he remained exempt if and when he drove a vehicle that seated fewer than eight passengers.

As an initial matter, the complaint does not allege specifically that Plaintiff Avery drove any vehicles that seated fewer than eight people. The amended complaint states only that Plaintiffs drove motor coaches, limo buses, minibuses, limousines, sedans, sport utility vehicles, and vans (Paper 15 at ¶ 6), and includes as an exhibit a copy of a printed ad for Chariots for Hire listing twenty-eight vehicles available for rental, only one of which seats fewer than eight people. (*See* Paper 15, Exhibit B). But even assuming that Plaintiff Avery spent at least some portion of his working time operating

vehicles that seat fewer than eight people, he is still subject to the motor carrier exemption.

Neither the language of the FLSA nor the motor carrier exemption indicates how to categorize individuals who operate both commercial motor vehicles and non-commercial motor vehicles. The Department of Labor regulations do not provide guidance on the use of a mixed fleet, but do address the somewhat analogous issue of mixed duties involving safety of operation. In that context the regulations suggest the general rule that "if the bona fide duties of the job performed by the employee are in fact such that he is called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities ... he comes within the exemption in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3) (2010). "Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in a particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting safety of operation." *Id.* "On the other hand, where the continuing duties are so trivial, casual, and insignificant as to be *de minimus*, the exemption will not apply to him in any workweek so long as there is no change in his duties." *Id.*

Courts that have considered the issue of a mixed fleet are somewhat divided on the proper approach, but the prevailing view is that the motor vehicle exemption should apply so long as the time an employee spends operating commercial motor vehicles is more than de minimus. *See, e.g., Hernandez v. Brink's, Inc.*, No. 08-0717-Civ, 2009 WL 113406 *6 (S.D.Fla. Jan. 15, 2009)("[W]hen mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment."); *Dalton v. Sabo, Inc.*, Civ. No. 09-358-AA, 2010 WL 1325613, *4 (D.Or. 2010)(holding that motor carrier exemption applied to plaintiffs that performed maintenance on a fleet that consisted of vehicles weighing both more and less than 10,000 pounds); *but see Tews v. Renzenberger*, 592 F.Supp.2d 1331 (D.Kan. 2009)(holding that the mere presence of a few commercial motor vehicles in a company's fleet does not render all of its driver's exempt from overtime pay).[3]  As the Court of Appeals for

---

[3] Courts have disagreed as to whether to place the emphasis on the type of work done by the employer as a whole or on the work done by individual employees. *Compare Tidd v. Adecco USA Inc.*, 2008 WL 4286512 (D.Mass. Sept. 17, 2008)(noting that the MCA exemption hinges on "what the employer does" rather than on an "individual employee's daily work") *with* Tews *v. Renzenberger, Inc.*, 592 F.Supp.2d 1331, 1348 (D.Kan. 2009)("applicability of the motor carrier exemption turns on the activities of each individual plaintiff (as opposed to the makeup of defendant's vehicle fleet)").  This distinction is more relevant in cases where the employees contesting the

the Seventh Circuit aptly explained, "[d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes." *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 901 (7th Cir. 2009).

In some situations where use of non commercial motor vehicle wholly predominates and the use of commercial motor vehicles is of very limited duration or extent, it may be appropriate to differentiate between employees or to apply the motor carrier exemption only for those periods of time when employees were operating commercial vehicles. *See Brooks v. Halsted Commc'ns Ltd.*, 620 F.Supp.2d 193, 199-201 (D.Mass. 2009)(finding motor carrier exemption did not apply where there was no evidence that any of the employees seeking overtime had ever worked on or driven the company's limited number of

---

exemption's applicability were not directly involved in operation of commercial motor vehicles. In *Tews* for example, only four percent of the employer's fleet consisted of commercial motor vehicles and there was significant doubt that most of the employees had ever operated a commercial vehicle. *Id.* Here, both Chariots for Hire as a whole and Plaintiff Avery were engaged in activities affecting the safe operation of commercial motor vehicles.

commercial motor vehicles); *Tews v. Renzenberger, Inc.*, 592
F.Supp.2d 1331, 1346 (D.Kan. 2009)(rejecting argument that "the
mere presence of commercial motor vehicles in [a] fleet renders
all employee-drivers exempt under the MCA exemption"). This
case does not present a situation where the use of qualifying
commercial motor vehicles was so limited, however, and thus it
is not necessary to decide where the line must be drawn.
Accordingly, Plaintiffs have not stated a claim for overtime
compensation under the FLSA.

   **b. Minimum Wages**

   Defendants contend that Plaintiffs' claims for unpaid wages
fail because they do not allege that Defendants failed to pay
them the minimum wage for all the hours they worked. Plaintiffs
do not respond to Defendants' arguments regarding Plaintiffs'
claim for unpaid wages.

   29 U.S.C. § 206 provides, in relevant part:

>      Every employer shall pay to each of his
>      employees who in any workweek is engaged in
>      commerce or in the production of goods for
>      commerce, or is employed in an enterprise
>      engaged in commerce or in the production of
>      goods for commerce, wages at the following
>      rates:
>
>      (1) except as otherwise provided in this
>      section, not less than
>
>      (A) $5.85 an hour, beginning on the 60th day
>      after May 25, 2007;
>
>      (B) $6.55 an hour, beginning 12 months after
>      that 60th day; and

> (C) $7.25 an hour, beginning 24 months after
> that 60th day[.]

The FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage. *See Blankenship v. Thurston Motor Lines*, 415 F.2d 1193 (4th Cir. 1969)(finding "there was no statutory violation [under the FLSA] so long as each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate.")(citation and internal quotations omitted).

Plaintiffs allege that they made $16 an hour on weekdays and $20 on Saturdays before 2009, and were paid for eight hours of work or a day rate from January 2009 onward. (Paper 1 at ¶¶ 30, 38). These amounts are clearly in excess of $7.25 an hour, the minimum wage currently required under the FLSA, and were in excess of whatever the minimum wage was from 2007 to 2009. Plaintiffs have alleged that they were unpaid for certain hours that they worked, but have not alleged that they were not paid the statutory minimum wage for each of the total number of hours they worked. Therefore, Plaintiffs have not stated a claim for unpaid wages under the FLSA.

### c. Wages for Pre-Trip Cleaning Inspections

Defendants contend that Plaintiffs' claims for damages as a result of the time they spent inspecting and cleaning the vehicles they drove must be dismissed because, even counting that time, Plaintiffs were compensated above the statutory minimum required by the FLSA. Defendants also contend that Plaintiffs' claim should be dismissed because the pre-trip cleanings and inspections are "preliminary activities" that are non-compensable under Section 4 of the Portal-to-Portal Act, 29 C.F.R. § 785.50(a)(2). (Paper 18, Attach. 1, at 17). Plaintiffs respond that drivers who drive vehicles that are not covered by the Motor Carrier Act exemption, like Plaintiff Avery, are entitled to pay for their pre-trip cleanings and inspections. (Paper 25, at 11-22).

As discussed above, Plaintiff Avery and other drivers who spend a portion of their time driving vehicles weighing less than 10,001 pounds are still covered by the Motor Carrier Act exemption, and Plaintiffs have not alleged that they were not paid the statutory minimum wage for each of the total number of hours they worked. Therefore, Plaintiffs have not stated a claim for unpaid wages for the time they spent inspecting and cleaning the vehicles, and it is not necessary to consider the applicability of the Portal-to-Portal Act.

**d. Gratuities**

Defendants argue that Plaintiffs have not stated a violation because they have not alleged that Defendants promised to pay them any portion of the service charge or gratuities collected from customers. Plaintiffs do not respond to Defendants' argument.

Under the FLSA, the "gratuity" alleged by Plaintiffs in the amended complaint does not constitute a tip or wages to which employees are entitled. The United States Department of Labor regulations, 29 C.F.R. § 531.55 ("Examples of amounts not received as tips"), provide:

> A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t). . . . Likewise, where the employment agreement is such that amounts presented by customers as tips belong to the employer and must be credited or turned over to him, the employee is in effect collecting for his employer additional income from the operations of the latter's establishment. Even though such amounts are not collected by imposition of any compulsory charge on the customer, plainly the employee is not receiving tips within the meaning of section 3(m) and 3(t). The amounts received from customers are the employer's property, not his, and do not constitute tip income to the employee.

Under the regulations, Plaintiffs have not stated a claim for unpaid wages in the form of gratuities or tips.

### e. Deductions from Wages

Defendants assert that Plaintiffs have not stated a claim for unpaid wages due to deductions made from their paychecks for damages to the vehicles. Defendants point out that Plaintiffs allege that Defendants had a policy of deducting up to $100 per paycheck for damages but that they did not allege whether Defendants actually deducted wages from their paychecks. Defendants also note that it is not impermissible under the FLSA to deduct wages unless it reduces the total wages below the statutory minimum wage per hour. Plaintiffs counter that the Maryland Wage Payment and Collection Law prohibits an employer from making any deductions from the wages of an employee absent certain specified circumstances.

Plaintiffs have not stated a claim under the FLSA or the MWHL for unpaid wages due to deductions made from their paychecks. Plaintiffs have not alleged any facts that Defendants actually deducted wages from their paychecks for damage to Defendants' vehicles. Furthermore, a deduction of wages is only impermissible if the deduction reduces total wages per hour below the statutory minimum wage. *See Mullins v. Howard County*, 730 F.Supp. 667, 673 (D.Md. 1990). Plaintiffs did not allege that any deductions caused their wages to fall

below the statutory minimum.  Plaintiffs argue in their brief
that such deductions violate the Maryland Wage Payment and
Collection Law ("MWPCL").  But Plaintiffs' complaint does not
reference the MWPCL in Plaintiffs' claims; it only references it
in Plaintiffs' prayer for relief.  (*See* Paper 15, at 11).
Therefore, Plaintiff has not stated a claim under the FLSA,
MWHL, or MWPCL for deductions from their paychecks.

### 2.   Breach of Agreement

Defendants argue that Plaintiffs have not stated a claim
for breach of agreement under Maryland law because, even
assuming that the "Changes for 2009" document constitutes a
contract, it provides only for payment when a driver is
"required to dump/clean the bus" and not for any other cleaning
activity in any other type of vehicle.  Defendants note that
Plaintiffs only alleged that they cleaned "vehicles" and did not
provide any facts to support that they cleaned "buses."
(Paper 18, Attach. 1, at 21)(citing Paper 15 ¶¶ 42, 71).

A claim for breach of agreement is not subject to a
heightened pleading requirement.  To satisfy the pleading
requirement Plaintiffs need only include sufficient detail to
show that the requisite elements for breach of agreement could
be met if the pleaded facts are taken as true.  For breach of
agreement, the requisite elements that must be shown are "that
the defendant owed the plaintiff a contractual obligation and

that the defendant breached that obligation." *Taylor v. NationsBank*, *N.A.*, 365 Md. 166, 175 (2001).

At this stage of the case, Plaintiffs have included sufficient detail to survive a motion to dismiss. Plaintiffs have alleged that a contract existed between the parties whereby Defendants would compensate Plaintiffs for pre-trip cleanings and inspections. As factual support, Plaintiffs state that Defendant West promised to begin paying drivers for these cleanings and inspections, (Paper 15 ¶ 46), and also that the "'Changes for 2009' document was an offer to pay Plaintiffs for the time they spent dumping/cleaning the vehicles in addition to the day rate they were promised." (*Id.* at ¶ 67). Plaintiffs further allege that they accepted this offer by continuing to clean the vehicles, and Defendants' subsequent failure to pay them constituted a breach of the agreement. Plaintiffs' claim for breach of agreement will not be dismissed because they used the term vehicle rather than bus in the complaint.

### 3. Fraudulent Misrepresentation

Defendants argue that Plaintiffs have not stated a claim for fraudulent misrepresentation related to Defendants' statements to customers or Plaintiffs about gratuities. Defendants assert that the facts alleged by Plaintiffs do not meet the heightened pleading standards under Fed.R.Civ.P. 9(b). (Paper 18, Attach. 1, at 22). Defendants maintain that

Plaintiffs' complaint does not specify who made the allegedly fraudulent statements, when the statements were made, or how Plaintiffs came to rely on them. (*Id.* at 23). Defendants argue that the only potentially adequate factual allegation is an advertisement to customers that stated, "Additional 20% service fee (tax, fuel and partial gratuity)." (*Id.*)(citing Paper 15, Attach. 4, at 2). Defendants note that Maryland law does not provide for a cause of action for statements made to third parties. (Paper 18, Attach. 1, at 24).

Plaintiffs respond that they sufficiently pled a claim for fraudulent misrepresentation. Plaintiffs state that they pled that: (1) Plaintiffs were told by Defendants that they would be given tips, (2) Defendants' website stated that a portion of the service fee paid by customers would be given to the drivers as a gratuity, (3) Defendants knew that their representation was false and was made with reckless indifference to the truth because Plaintiffs were not given tips, (4) Defendants kept the tips themselves, (5) Plaintiffs relied on Defendants' representations by not requesting tips from customers and because customers regularly told Plaintiffs that they had paid a gratuity to the Defendants, and (6) Plaintiffs were denied significant income as a result of Defendants' actions. (Paper 25, at 15-16).

To state a claim for fraudulent misrepresentation under Maryland law, a plaintiff must allege:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 195 (1995).

Because Plaintiffs allege that Defendants engaged in fraud, their claim is subject to the heightened pleading standard under Fed.R.Civ.P. 9(b). *Harrison*, 176 F.3d at 783-84. Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The word circumstances "is interpreted to include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortgage, Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000)(quoting *Windsor Assocs. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).

The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all of the facts are learned only after discovery, and safeguard the defendant's reputation. *Harrison*, 176 F.3d at 784. In keeping with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.*

Plaintiffs have not pled with particularity what representation Defendants made to them and when Defendants made the representation. Plaintiffs' amended complaint only states that "Defendants intentionally collected and kept the Plaintiffs' tips for its own benefit after telling Plaintiffs that the tips would be paid to them." (Paper 15 ¶ 74). Plaintiffs do not allege the time, place, and contents of the false representation, or the identity of the person making the misrepresentation and what was obtained thereby. Additionally, Plaintiffs may not state a claim for fraudulent misrepresentation for statements made by Defendants to third parties. *See Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.*, 109 F.Supp.2d 424, 430 (D.Md. 2000)("[U]nder

Maryland law, there is no fraudulent misrepresentation cause of action for statements made to third parties.")(citing *Parlette v. Parlette*, 88 Md.App. 628, 635 (1991)). Therefore, Plaintiffs have not stated a claim for fraudulent misrepresentation.

## II. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part. A separate Order will follow.

                                      /s/

DEBORAH K. CHASANOW
United States District Judge